UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INLANDBOATMEN'S UNION OF THE PACIFIC,<br><br>Plaintiff,<br><br>v.<br><br>FOSS MARITIME COMPANY,<br><br>Defendant. | CASE NO. C14-1403JLR<br><br>ORDER GRANTING MOTION TO TRANSFER VENUE |

## I. INTRODUCTION

Before the court is Defendant Foss Maritime Company's ("Foss") motion to transfer venue. (*See* Mot. (Dkt. # 6).) Having considered the submissions of the parties, the balance of the record, and the relevant law, the court GRANTS Foss's motion and TRANSFERS venue to the District of Hawai'i.

//

//

ORDER- 1

## II. BACKGROUND

This case has its genesis in an employment dispute between Leonard Kapea, Jr. and Young Brothers, Limited ("Young Brothers"), which is an independent subsidiary of Foss. (*See generally* Compl. (Dkt. # 1); Kapoi Decl. (Dkt. # 7) ¶¶ 5-7, 13.) Young Brothers, which is incorporated and has its principal place of business in Hawai'i, has provided inter-island cargo services throughout the state of Hawai'i for over 100 years. (Kapoi Decl. ¶ 3.) Young Brothers is a party to a collective bargaining agreement ("CBA") with the Hawai'i Region unit of Plaintiff Inlandboatmen's Union of the Pacific ("the Union"). (*Id.* ¶ 4.)

Mr. Kapea is a member of the Union's Hawai'i Region unit. (*Id.* ¶ 5.) Mr. Kapea was employed by Young Brothers as an ordinary seaman and cook in two stints: from November 2007 to September 2008, and then again beginning in August 2010. (*Id.*) In June 2014, Young Brothers terminated Mr. Kapea's employment allegedly in response to a series of "unsafe and negligent acts in violation of the company's safety policies" by Mr. Kapea. (*Id.* ¶ 7.) According to Foss, the precipitating event was Mr. Kapea's near-disastrous leap across a growing gap between a tug and a barge. (*Id.*)

In July 2014, the Hawai'i Region unit of the Union initiated a grievance procedure against Young Brothers to contest Mr. Kapea's discharge. (*Id.*; *see also* Compl. ¶ 4.3.) Young Brothers denied the grievance on July 7, 2014. (Compl. ¶ 4.4.) The Union advanced the grievance to arbitration on July 16, 2014. (*Id.* ¶ 4.6) That same day, Young Brothers requested an extension of time to respond to the grievance, which the Union granted. (*Id.*) Young Brothers, however, did not respond by the Union's August 2, 2014,

deadline.  (*Id.*)  The Union wrote two letters to Young Brothers, the second of which was sent on August 13, 2014, and neither of which Young Brothers acknowledged.  (*Id.* ¶¶ 4.7-4.9.)  Instead, Young Brothers reinstated Mr. Kapea on August 28, 2014.  (Kapoi Decl. ¶ 8.)

Nonetheless, the Union filed this suit on September 11, 2014, under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).  (*See* Compl.)  The Union claims that, according to the terms of the CBA, once Young Brothers failed to respond by August 2, 2014, the grievance was effectively resolved in favor of Mr. Kapea, and Mr. Kapea is automatically entitled to be fully reinstated and otherwise "made whole" for his discharge.  (*Id.*)

Foss maintains it is not a proper defendant to the suit because it is not a party to the CBA and did not employ Mr. Kapea.  (Mot. at 3.)  Before reaching the merits, Foss first moves to transfer the case to the District of Hawai'i on the basis that Hawai'i is the state where the operative events occurred and the pertinent witnesses are located.  (*See generally id.*; Reply (Dkt. # 16).)  In addition, Foss moves to stay the initial discovery deadlines pending resolution of the motion to transfer.  (Mot. to Stay (Dkt. # 9).)  The Union opposes the motion to transfer on the basis that the case presents only questions of law regarding interpretation of the text of the CBA, and as such may be decided on summary judgment without the need to inconvenience any witnesses that may reside in Hawai'i.  (Resp. (Dkt. # 10).)  The Union also formally opposes the motion to stay, despite having agreed with Foss to extend the discovery deadlines by 30 days.  (*See* Resp.

to Mot. to Stay (Dkt. # 10); 12/4/14 Letter (Dkt. # 19).) These motions are now before the court.

### III. ANALYSIS

Under 28 U.S.C. § 1404, the court has discretion to transfer this case in the interests of convenience and justice to another district in which venue would be proper. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). Specifically, Section 1404(a) states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). The purpose of this statute is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Pedigo Prods., Inc. v. Kimberly-Clark Worldwide, Inc.*, No. 3:12-CV-05502-BHS, 2013 WL 364814, at *2 (W.D. Wash. Jan. 30, 2013) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

The parties do not dispute that venue is proper in both the District of Hawai'i and the District of Washington. (*See generally* Resp.; Reply); *see also* 28 U.S.C. § 1391(a), (b). Therefore, disposition of this motion depends on whether transfer to Hawai'i is most convenient and just. Foss bears the burden of showing that a transfer is appropriate. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981); *Silver Valley Partners, LLC v. De Motte*, No. C05-5590 RBL, 2006 WL 2711764, at *2 (W.D. Wash., Sept. 21, 2006).

The Ninth Circuit instructs district courts to apply a nine-factor balancing test to determine whether to transfer a case under § 1404(a). *Jones*, 211 F.3d at 498. The test balances the following factors: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, [] (8) the ease of access to sources of proof," and (9) the public policy considerations of the forum state. *Id*. at 498-99. The court considers each of these factors in turn. Because the case bears a stronger connection to Hawai'i than to Washington, the court concludes that the case should be transferred to the District of Hawai'i.

**1. Location Where Agreement was Negotiated and Executed**

The CBA was negotiated over the course of several months and ultimately executed in Honolulu, Hawai'i. (Kapoi Decl. ¶ 4.) Mr. Kapoi, who represented Young Brothers in the negotiations, lives and works in Honolulu, Hawai'i. (*Id.* ¶¶ 2, 4.) The remaining key Young Brothers representatives who participated in the negotiations also reside and work in Hawai'i. (*Id.*) Additionally, three of the four Union representatives who participated in the negotiations continue to reside and work in Hawai'i. (*Id.*) Therefore, this factor favors transfer.

//

//

### 2. State Most Familiar with the Governing Law

The Union brings this suit pursuant to the federal Labor Management Relations Act, 29 U.S.C. § 185(a). (*See* Compl. ¶ 5.3.) The Hawai'i and Washington federal district courts are equally capable of applying federal law. Moreover, to the extent state contract law is applicable, federal courts are equally equipped to apply distant state laws when the law is not complex. *See, e.g.*, *Barnstormers, Inc. v. Wing Walkers, LLC*, No. 09cv2367 BEN (RBB), 2010 WL 2754249, at *3 (S.D. Cal. July 9, 2010) (stating that a federal court in Texas would be equally adept at applying California law related unfair competition claims). Here, neither of the parties has asserted that the substantive law will be complex. Accordingly, regardless of the substantive state law applied in this case, if any, both district courts are equally equipped to handle the case, and thus, this factor is neutral.

### 3. Plaintiff's Choice of Forum

As the plaintiff in this action, the Union's choice of forum receives substantial deference and Foss must "make a strong showing of inconvenience" to upset that choice. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The Union's preference, however, is not dispositive. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) (holding that "the discretion to be exercised is broader" under § 1404(a) than under the doctrine of *forum non conveniens*). In particular, courts are hesitant to defer to a plaintiff's choice of forum when the case lacks strong ties to that district. *See Pedigo Prods.*, 2013 WL 364814, at *3 ("Where the action has little connection with the

chosen forum, less deference is accorded plaintiff's choice, even if plaintiff is a resident of the forum state.").

As discussed in greater detail in the following sections, this case features few, if any, connections to Washington. Almost all relevant events occurred in Hawai'i and the substantial majority of potential witnesses and relevant documents are located in Hawai'i. Although these facts are not enough to completely overcome the presumption in favor of the Union's choice of forum, the court finds that the lack of strong connections to Washington makes this factor weigh only slightly against transfer.

**4. Parties' Contacts with the Forum**

The Union is headquartered in Washington. (Compl. ¶ 3.1.) However, the Union also maintains a chapter local to the Hawai'i region, which chapter is the party to the CBA at issue in this case and initiated the grievance on behalf of Mr. Kapea. (Kapoi Decl. ¶ 8; *see also* CBA (Dkt. # 11-1).)

Foss is a Washington corporation with its headquarters in Washington. (Compl. ¶ 3.2.) However, Foss provides harbor support services in Honolulu Harbor, and Foss's Hawaiian operations and labor relations—including those at issue in this case—are managed locally by employees working and living in Hawai'i. (Kapoi Decl. ¶ 13.)

Overall, the court finds that the parties' contacts in each forum are appreciable. Although the parties' contacts to Washington may appear more substantial in the abstract, in the context of this case, the parties' contacts with Hawai'i have greater significance. *See Silver Valley Partners*, 2006 WL 2711764, at *3 (transferring venue because "both parties have case-related contacts with the District of Idaho, and only plaintiffs have case-

related contacts with the Western District of Washington"). Therefore, this factor weighs in favor of transfer.

### 5. Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum

The events underlying the Union's claim occurred in Hawai'i. (*See generally* Kapoi Decl.) The CBA at issue was negotiated and executed in Hawai'i. (*Id.* ¶ 4.) Mr. Kapea was hired in Hawai'i, performed the relevant maritime services for Young Brothers in Hawai'i, was fired in Hawai'i, and was reinstated to employment in Hawai'i. (*See id.* ¶¶ 7, 8.) The supervisor who allegedly made the decision to terminate Mr. Kapea's employment lives and works in Hawai'i. (*See id.* ¶ 13; 11/7/14 Union Letter.) Documentation regarding Mr. Kapea's discharge, including safety records, is located in Hawai'i, and this documentation was provided to the Union in Hawai'i. (Kapoi Decl. ¶ 13; 11/7/14 Union Letter.) Finally, the Union's Hawai'i Region initiated the grievance through Regional Director Warren B. Ditch. (*Id.* ¶ 8.)

The Union has provided no evidence or argument showing that this case bears any connection to the State of Washington. (*See generally* Resp.) The best the Union can do is insist that the case can be resolved as a simple matter of contract interpretation, and that geographical connections are therefore irrelevant. It may very well be that the case can ultimately be resolved on summary judgment, but at this early stage, that possibility is by no means a foregone conclusion. Additionally, Foss points to questions of fact that could preclude summary judgment, including whether Foss is the appropriate party to the litigation and what constitutes Mr. Kapea's appropriate damages, if any. (*See generally* Reply (Dkt. # 18).) Specifically, the Union seeks to hold Foss liable under a single-

employer theory. (*See* 11/7/14 Union Letter.) The single-employer analysis considers factors such as interrelation of operations, common management, centralized control of labor relations, and common ownership. *Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv. of Mobile, Inc.*, 380 U.S. 255, 256 (1965). The evidence and witnesses pertinent to analyzing the extent to which Foss's and Young Brothers' operations, management, and labor relations are interrelated are largely located in Hawai'i. (*See* Kapoi Decl. ¶ 13.) Accordingly, this factor weighs in favor of transfer.

### 6. Differences in the Costs of Litigation in the Two Forums

When considering the difference in cost between two forums, courts disfavor transferring venue when "transfer would merely shift rather than eliminate" costs and inconvenience. *Decker Coal*, 805 F.2d at 843. The relative cost analysis focuses primarily on the venue's proximity to witnesses. *See Silver Valley Partners*, 2006 WL 2711764, at *4. Here, the Union has not identified any witnesses located in Washington or, for that matter, any witnesses located outside of Hawai'i. Foss, however, has identified by name six potential witnesses who reside in Hawai'i: Mr. Kapea; Mr. Kapoi, who reinstated Mr. Kapea; three of the four Union representatives in the CBA negotiation; and the Young Brothers supervisor who initially decided to terminate Mr. Kapea's employment. (Kapoi Decl. ¶¶ 2, 4, 13; *see also* Cote Decl. (Dkt. # 11) ¶ 3.) Additionally, Foss has identified other witnesses who reside in Hawai'i, including the managers involved in Mr. Kapea's termination and grievance, the vessel captains and crewmembers who observed Mr. Kapea's alleged safety violations, and Young Brothers' representatives at the CBA negotiation. (Kapoi Decl. ¶¶ 4, 10, 13.) Because all of the

potential witnesses identified to date reside in Hawai'i, transfer to Hawai'i would not merely shift costs between the parties, but rather would lower the overall costs of the litigation. Accordingly, this factor weighs in favor of transfer.

### 7. Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses

A court's subpoena power is only relevant if non-party witnesses within the state will likely refuse to testify. *See Silver Valley Partners*, 2006 WL 2711764, at *4 (concluding that the fact that "[n]one of these witnesses will likely be unwilling to testify" eliminates this factor's importance). For example, the court in *Silver Valley Partners* determined that the availability of subpoena power in Washington to compel non-party witnesses did not weigh on the transfer question because the plaintiff's Washington witnesses were "experts, presumably paid for their testimony," and thus would almost certainly be willing to testify. *Id.*

Here, neither party has identified any non-party witnesses who will likely refuse to testify. (*See* Mot.; Resp.) In fact, the only witnesses identified were at one time employees of Young Brothers and the Union. To the extent that some of these witnesses have since changed employment, or that Foss is unable to procure the testimony of Young Brothers' employees, the fact that the witnesses reside in Hawai'i suggests that this factor weighs in favor of Foss. *See* Fed. R. Civ. P. 45(c). However, Foss bears the burden of establishing that this factor applies, and Foss has not put forth any evidence showing that any witness will likely refuse to testify. *See Silver Valley Partners*, 2006 WL 2711764, at *4. Therefore, the court finds that this factor is neutral.

**8. Ease of Access to Sources of Proof**

This factor focuses on the location of witnesses, documentary evidence, and inventory to be inspected, if any. *See Jones*, 211 F.3d at 499; *Silver Valley Partners*, 2006 WL 2711764, at *4. As discussed above, the fact that all witnesses identified at this juncture are located in Hawai'i militates in favor of transfer. In addition, Foss shows that files regarding Mr. Kapea's hiring, safety record, termination, and grievance, as well as documentation of the CBA negotiation, are located in Hawai'i. (Kapoi Decl. ¶¶ 4, 9.) The Union fails to establish that any evidence, documentary or otherwise, is located in Washington. The court notes that the ability to transfer documents electronically with relative ease and expense may lessen the importance of this factor with respect to documentary evidence. Nonetheless, this factor still weighs slightly in favor of transfer. *See Silver Valley Partners*, 2006 WL 2711764, at *4 (finding that the location of documentary evidence in Idaho supported transferring venue to Idaho).

**9. Public Policy of the Forum State**

Public policy factors include the "local interest in having localized controversies decided at home" and deciding cases "where the claim arose." *Decker Coal*, 805 F.2d 834 at 843. Forum states have an interest in providing redress for their injured residents. *See Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996) (noting that "California maintains a strong interest in providing an effective means of redress for its residents tortiously injured"). Here, all operative events occurred in Hawai'i, and the underlying injured party, Mr. Kapea, is a Hawai'i resident. Although the nominal plaintiff resides in Washington, the Union is suing on behalf of Mr. Kapea, and the ultimate relief will

pertain to him. (*See generally* Compl.) As such, Hawai'i's interest in deciding this localized controversy at home is greater than Washington's interest in the case. Therefore, this factor weights in favor of transfer.

    **10. Balancing the *Jones* factors**

Balancing the above factors, the court finds that Foss has met its burden to demonstrate that transfer is appropriate. Six factors weigh in favor of transfer, two factors are neutral, and only one factor weighs against transfer. Most importantly, the majority of evidence and witnesses are located in Hawai'i, and public policy favors litigation in Hawai'i. Accordingly, transfer to the District of Hawai'i pursuant to 28 U.S.C. § 1404 is warranted.

### IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's motion to transfer venue (Dkt. 6). The court DENIES Defendant's motion to stay discovery pending resolution of the motion to transfer (Dkt. # 9) as moot. The court TRANSFERS the case to the District of Hawai'i pursuant to 28 U.S.C. § 1404.

Dated this 2nd day of January, 2015.

                                                        JAMES L. ROBART
                                                       United States District Judge